IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| SANDRIA SHELDON #1363945 | § | |
| v. | § | CIVIL ACTION NO. 6:08cv68 |
| SMITH COUNTY JAIL MEDICAL CLINIC, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Sandria Sheldon, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violation of her constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment pursuant to 28 U.S.C. §636(c). As Defendants, Sheldon named the Smith County Jail Medical Clinic, the Smith County Sheriff's Department, Sheriff J.B. Smith, an unknown nurse, an unknown hospital, unknown jailers, and unknown doctors.

Sheldon's amended complaint focuses on an incident in the Smith County Jail in which she was placed in a suicide tank. An evidentiary hearing was conducted on February 25, 2010, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Sheldon gave some background information concerning her arrest and incarceration in the jail. She said that on February 19, 2006, she was arrested on charges of a new offense. She said that she had been assaulted by her common-law husband, identified as "Brad," who is now deceased; he hit her in the head and threw a candle jar at her. The next thing she knew, she was in her car, but he was still beating her. When he finally let her up, she said, she was disoriented. Her car was parked by the side of the curb and would not start. Brad had "run off" and left her there, Sheldon said, so she had to try to start the car and move it out of traffic.

A trooper with the Texas Department of Public Safety came to the scene and questioned her about being drunk, but she said that she was not. An ambulance arrived at one point, Sheldon said, but the trooper sent the medical personnel away.

Sheldon stated that the next thing she remembered was being in the hospital having blood drawn. She told the nurse that the trooper had sexually assaulted her, and the nurse asked the trooper if they "needed a rape kit," and the trooper "stammered no." Sheldon said that the results of the blood test did not come back until nine months later, and they showed that she had in her system no alcohol, no illegal drugs, and only medications which had been prescribed for her, in less than the normal amount. Sheldon explained that she had been "run over by an 18 wheeler" several years earlier, although she later described the vehicle as a tractor trailer, and so she suffers from "chronic pain syndrome" as a result.

While she was in the Smith County Jail, Sheldon said, she told jail personnel that something was wrong with her because her head hurt constantly. She sent in sick calls telling the medical staff about the car wreck and beating. Before she went into the jail, she was on strong pain medications, and at one point a jail nurse called the doctor and secured a prescription for psychiatric medications which are also used for pain relief. However, Sheldon said that she only received one dose of this medication.

At some point while she was in the Smith County Jail, Sheldon said, she saw a nurse and told him that she was in pain. He asked her how bad was the pain, and she replied that it was "so bad she wished she was dead." Sheldon testified that she meant this as a figure of speech, but the nurse took it literally. He called to a jailer outside the cell and told him to take Sheldon to a suicide tank. There, she was stripped of all of her clothes and given a "thick quilt gown" to wear; Sheldon said that the outfit was "so thick you couldn't tie a knot in it. She said that she kept telling the jailers that she was not suicidal and that "they should have focused on her pain." After three days, Sheldon said that she was taken out of the suicide tank and put in a regular tank.

Sheldon said that in 2007, an MRI found bone spurs in her neck, and she was told that she needed surgery. She indicated that she wanted to wait until she was paroled to have surgery, and said that she was serving consecutive eight-year and 10-year sentences.

Sheldon testified that she sued the nurse because he should have known not to put an injured person in the suicide tank. She complained that the hospital did not provide a rape kit or treat her for her injuries. On cross-examination, she said that she had sued Sheriff J.B. Smith because a book that she read on prisoner litigation said that she was supposed to.

Sheldon said that she had post-traumatic stress disorder from being run over by the tractor trailer, and also suffers from anxiety disorder and severe chronic pain syndrome. She thought that she had been placed in the suicide tank around March 8, 2006. The day before, Sheldon says that she had filed a sick call request saying that she had not been sleeping well and asking to see the doctor. Sheldon explained that she had been wanting to see the doctor as well as a psychiatrist because she had been having "memory flashbacks" to her arrest.

Sheldon said that she sued the "Smith County Medical Clinic" because she did not know who was running the clinic or the name of the nurse who put her in the suicide tank. Sheldon acknowledged that she had been placed in the suicide tank because of her statement that she "wished she were dead."

Captain Gary Pinkerson, the chief deputy sheriff in charge of the Smith County Jail, testified that at the time that Sheldon was in the Smith County Jail, the medical care was provided to jail inmates through a contract with the University of Texas Health Center. He said that all inmates received a medical screening within 24 hours and that jail personnel did not administer medications.

Pinkerton stated that suicide threats in jail are taken very seriously. If an inmate says something about suicide, precautions are taken. Specifically, he said, the inmate is placed in a separate cell and checked every five to 15 minutes. Medical personnel decide when the inmate is released from suicide watch, not jail personnel. Pinkerton said that Sheldon's statement that she "wished she was dead" was considered a serious threat, and there was no reason to discount it.

## The Smith County Jail Records

The Court has received and reviewed copies of Sheldon's jail records. These records show that Sheldon was brought into the jail on February 19, 2006. She was charged with a violation of probation and driving while intoxicated (3rd or more).

The jail medical records show that Sheldon filed a sick call request on March 7, 2006, saying that she had not been sleeping due to muscle spasms in her neck amd lower back. On March 9, she filed a sick call request which reads as follows:

> I need some Aleve for the pain from my injuries. I also need to come talk to a nurse about being in the side cell and under suicide watch. I never told low risk nurse I wanted to kill myself or hurt myself. The low risk nurse asked me if my injuries hurt. I told her yes it has been one of those days that I wish I was dead because of pain, but I did not mean I wanted to kill myself. Please let me talk with you!

This sick call request was received in the clinic on March 10 and the response was that Sheldon would be seen by the doctor that day. Sheldon indicates that she stayed in the side cell for three days, indicating that she was released on the day that the doctor saw her.

## Legal Standards and Analysis

At the hearing, Sheldon indicated that she wished to sue regarding the hospital's improper treatment of her and the failure to provide her with a rape kit after her arrest. To the extent that Sheldon wishes to pursue these claims in this action, the Court notes that these claims were the subject of two prior civil rights lawsuits filed by Sheldon, styled Sheldon v. Burkett, et al., civil action no. 6:08cv35 (E.D.Tex., dismissed with prejudice September 24, 2008, appeal dismissed February 5, 2009), and Sheldon v. Trinity Mother Frances Hospital, et al., civil action no. 6:08cv94 (E.D.Tex., dismissed with prejudice July 15, 2008, appeal dismissed October 31, 2008).

The Fifth Circuit has held that *in forma pauperis* complaints which merely repeat pending or previously litigated claims may be dismissed as frivolous, malicious, or abusive under 28 U.S.C. §1915. Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988); McCallup v. Hoffman, 54 Fed.Appx. 410, 2002 WL 31689388 (5th Cir., October 30, 2002). Because these claims have previously been adjudicated, they may be dismissed.

The primary complaint which Sheldon raises in the present case is that after she made a remark to a nurse, she was placed in a side cell where her clothing was removed and she was given only a "thick quilt gown" to wear. She acknowledged that she told the nurse that she "wished she was dead," but said that this was just "a figure of speech" and that she did not mean it literally. The jail supervisor, Captain Pinkerton, testified that all threats of suicide are taken seriously.

There is no question that the problem of jail suicide is a significant one, and that jails are obligated to react to the threat of such an incident. *See, e.g.*, Silva v. Donley County, Texas, 32 F.3d 566, 1994 WL 442404 (5th Cir., July 28, 1994) (inmate committed suicide in county jail; the Fifth Circuit upheld a denial of summary judgment for the sheriff, saying that "the summary judgment record before us reflects a dispute about whether [the sheriff] was deliberately indifferent in failing to establish suicide detection / prevention training for the jail personnel or in establishing *de facto* a policy or custom which included such things as irregular cell checks of inmates, even those who may have exhibited suicidal tendencies").

In Short v. Smoot, 436 F.3d 422, 425 (4th Cir. 2006) the jailers failed to remove the clothing and shoelaces of an inmate who had threatened suicide, did not call for a mental health examination, and failed to monitor the inmate after placing him in a side cell. The cell had cameras, but the officer in the monitor room did not watch them or otherwise check on the prisoner. Over a period of some 30 minutes, the inmate removed the laces from his shoes, tied them to the bars and then around his neck, and hung himself; he was not discovered until an hour and a half later.

After his survivors brought suit, the jail denied summary judgment to the jailers on duty. On appeal, the Fourth Circuit held that the first-shift officers, who had placed the prisoner om the cell with video surveillance, acted reasonably and were entitled to the defense of qualified immunity despite the fact that more could possibly have been done. By contrast, the Fourth Circuit said, the evidence supported the inference that the officer in the monitor room had observed the inmate preparing to hang himself and then doing so, but did not take any action to stop him. The court held

5

that this could amount to deliberate indifference, and so the existence of disputed facts precluded the entry of summary judgment for this jailer.

In the present case, similar precautions were taken with Sheldon. After she made a remark about "wishing she were dead," she was placed in an observation cell and her clothing was replaced with a "thick cotton quilt" that Sheldon said was "too thick to tie in a knot," meaning that an inmate could not hang herself with it. She was seen by a physician on May 10, after being placed in the observation cell on May 8. The jailers' actions did not amount to deliberate indifference; on the contrary, such actions represent a reasonable response to the threat of suicide. Although Sheldon says that she meant her remark as a "figure of speech" and not literally, the jailers can hardly be faulted for taking every such remark seriously, given the potentially tragic consequences of failing to do so when such a remark carries meaning behind the words. In Hare v. City of Corinth, Miss., 74 F.3d 633, 644 (5th Cir. 1996), the Fifth Circuit stated as follows:

> Articulating the State's responsibility for preventing suicide by detainees exposes the absence of a constitutionally significant distinction between failure-to-protect and medical care claims. As we have explained, we have been willing to entertain suicide-based claims as implicating the State's responsibility to provide medical care. [citations omitted]. Quite often, however, the State's obligation to prevent suicide may implicate a kaleidoscope of related duties, including a duty to provide not only medical care, but also protection from self-inflicted harm. Thus, a state jail official might be liable for a suicide resulting from the official's failure to remove a pair of scissors from the cell of a pretrial detainee known to be suicidal, even if the state official had otherwise provided the mentally disturbed detainee with constitutionally sufficient medical care.

Sheldon has failed to show that the fact that she was placed on suicide watch after telling a nurse that she "wished she was dead" amounted to a violation of the Constitution or laws of the United States. The nurse and jailers clearly were not being deliberately indifferent to her safety, but on the contrary were taking precautions to ensure her safety. The fact that these precautions were unnecessary in this case does not render them unreasonable or unconstitutional. Her claim on this point is without merit.

Qualified Immunity

The answer filed in the case raises the defense of qualified immunity, albeit only on behalf of Sheriff Smith, the sole Defendant in the case whose identity was known to Sheldon at the time that she filed the lawsuit. To the extent that this answer raises the defense of qualified immunity on behalf of the other individuals sued in the case, including the nurse who had Sheldon placed in the side cell, the jailers who kept her there, and the unknown doctors, it is plain that this defense is meritorious.

The Fifth Circuit has stated that a qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a Section 1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

In order to discharge this burden, the Fifth Circuit has said, the plaintiff must satisfy a two-prong test. First, she must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). The prongs of this test are not sequential, but may be reviewed in either order. Pearson v. Callahan, 129 S.Ct. 808, 817 (2009).

In this case, Sheldon has failed to discharge her burden because she has not shown that any constitutional violations were committed, nor that any of the defendants acted unreasonably in light of clearly established federal law. As noted above, the nurse and the jailers acted reasonably in responding to Sheldon's statement that she "wished she was dead," regardless of Sheldon's subjective intent in making the statement. The Fifth Circuit has specifically held that the plaintiff's

burden of overcoming the qualified immunity defense cannot be discharged by conclusory allegations and assertions. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). To the extent that the Defendants' answer raised the defense of qualified immunity on the part of the unknown defendants, such defense is meritorious.

At the hearing, Sheldon said that she had sued Sheriff Smith because a litigation guide said that she was supposed to, presumably because of his supervisory role as Sheriff. However, the Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Sheldon has not shown that Sheriff Smith was personally involved in a constitutional violation or that wrongful conduct by Sheriff Smith was causally connected to a constitutional violation. Nor has she shown that the Sheriff implemented constitutionally deficient policies which were the moving force behind a constitutional deprivation. While her placement in the observation cell may have been the result of policy, Sheldon has not shown that this policy was unconstitutional, nor that spending a short period of time in this cell amounted to a constitutional deprivation. Her claim against Sheriff Smith is without merit.

Other Defendants in the Case

Sheldon named the Smith County Jail Medical Clinic, the Smith County Sheriff's Department, Sheriff J.B. Smith, an unknown nurse, an unknown hospital, unknown jailers, and unknown doctors. The jail medical clinic and the sheriff's department are sub-units of Smith County, with no separate legal existence, and cannot be sued in their own names. Darby v. Pasadena

Police Department, 939 F.2d 311, 313 (5th Cir. 1991); *see also* Shelby v. Atlanta, 578 F.Supp. 1368, 1370 (N.D. Ga. 1984); Post v. Ft. Lauderdale, 750 F.Supp. 1131 (S.D. Fla. 1990); Missouri ex rel. Gore v. Wochner, 475 F.Supp. 274, 280 (E.D. Mo. 1979), *aff'd* 620 F.2d 183 (8th Cir. 1980).

The "unknown nurse" was the person to whom Sheldon made the remark which caused her placement in the observation cell. As noted above, Sheldon has not shown that the nurse's action in taking her remark that she "wished she was dead" seriously was a constitutional violation. The placement in the observation cell itself, and the provision of clothing that made suicide by hanging impossible, was a reasonable response to the possibility that a prisoner, who said that she "wished she was dead," might be inclined to act upon that expressed wish. Sheldon has failed to show a constitutional violation and her claim against the nurse is without merit, as is her claim against the jailers who actually placed her in the observation cell.

Finally, Sheldon vaguely alludes to suing an "unknown hospital" and "unknown doctors and medical staff." The Fifth Circuit has held that in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986). Sheldon articulated no facts, in her complaint or at the evidentiary hearing, showing a violation of her constitutional rights by any medical care providers at the Smith County Jail, or at the hospital to which she was taken after her arrest. Her claims against these defendants are without merit as well.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke

9

v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Sheldon 's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted.  Consequently, her lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b).  *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993).  In addition, the Defendants are entitled to the defense of qualified immunity as pleaded in their answer.  It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted.  28 U.S.C. §1915A(b).  It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.  Finally, it is

ORDERED that the Clerk shall provide a copy of this opinion to the Administrator of the Three-Strikes List for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **22** day of **April, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE